IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHANNON SIMMONS                                                                                         PLAINTIFF

V.                                    CIVIL NO. 1:13-cv-01017

SHERIFF DAVID NORWOOD;
DOUG WOODS; ANDREW
TOLLERSON; and JAMES BOLTON                                                                 DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed *pro se* by the Plaintiff, Shannon Simmons, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the Arkansas Department of Correction Grimes Unit ("ADC").

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 21. I held a hearing on September 16, 2015 at which time I heard Plaintiff's sworn testimony in response to this Motion for Summary Judgment. After careful consideration, the undersigned makes the following Report and Recommendation.

1.      **BACKGROUND**

Plaintiff filed his Complaint on March 4, 2013 and his Supplement on April 29, 2013. ECF Nos. 3, 11. Plaintiff also filed a Supplement to his Amended Complaint on April 23, 2013. ECF No. 16. At the time he filed his Complaint, Plaintiff was incarcerated in the Ouachita County

Detention Center ("OCDC").  Plaintiff is now incarcerated in the ADC.

In his Complaint, Plaintiff names David Norwood, Doug Woods, Andrew Tollerson, and Lt. James Bolton as Defendants.  ECF No. 1.  In his Supplement, Plaintiff added Chris Lindsey, Anthony Grummer, Chief Deputy Jason Dickerson, Deanna Friends, and Wesley Stringfellow as Defendants in this matter.  ECF No. 11.  Plaintiff alleges both official and individual capacity claims against these Defendants.

In his Complaint and Supplement, Plaintiff claims his constitutional rights were violated (1) when he was denied medical care; (2) when he was threatened with lockdown; (3) when 309 inmates logged his information at intake into the OCDC and passed his mail; and (4) by the conditions of his confinement in the OCDC, specifically the lack of sheets, grievances, tuberculosis lights, and bed rails, and the presences of mold.  ECF Nos. 1, 11.

Defendants filed a Motion for Summary Judgment on April 24, 2015.  ECF No. 23.  The Court held a hearing on this Motion on September 16, 2015.  At this hearing, Plaintiff provided sworn testimony as his response to Defendants' Motion.

**2.      SUMMARY JUDGMENT RECORD**

Defendants argue in their Motion for Summary Judgment: (1) Plaintiff failed to allege any personal involvement of Defendants Norwood or Bolton; (2) Plaintiff failed to allege any Defendants were responsible for the conditions of confinement he complains of; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's conditions claims do not rise to the level of constitutional violations; (5) Plaintiff has failed to allege any injury from the conditions he complains of; (6) Plaintiff has failed to sufficiently allege the 309 inmates handling his mail and intake information violated his privacy rights; (7) Plaintiff failed to allege the lack of tuberculosis

lights caused any injury; (8) Plaintiff failed to sufficiently allege a denial of medical care claim; and (9) Plaintiff failed to allege any policy or custom that violated his constitutional rights.

At the summary judgment hearing, I asked Plaintiff to provide a sworn statement detailing how he believes his constitutional rights were violated. Below is a summary of his sworn testimony:

Plaintiff testified there was mold on the wall next to his bunk and the cleaning supplies provided to him did not remove it. Plaintiff also testified a fellow inmate in his pod had tuberculosis and Plaintiff was exposed to him. Plaintiff, however, has not been diagnosed with tuberculosis since leaving the OCDC. Plaintiff further testified he was never injured from the lack of bed rails. Additionally, Plaintiff testified the 309 inmate that took his information at intake into the OCDC obtained Plaintiff's social security number, address, and other private information. However, Plaintiff is not aware of any injury he suffered from giving this information to the 309 inmate. Finally, Plaintiff testified a 309 inmate delivered his mail and the mail was already opened so the 309 inmate could have obtained personal information from Plaintiff's letters and pictures. Plaintiff, however, has no knowledge of whether the 309 inmate actually read his letters or looked at his pictures.

Regarding his denial of medical care claim, Plaintiff testified he put in a medical request for Ibuprofen but the OCDC had stopped providing Ibuprofen by request due to inmate abuse. Because he was denied Ibuprofen, Plaintiff sat in his bed without any pain relief. In addition to his headache, Plaintiff also suffered extreme nausea. Further, Plaintiff testified he told personel

that he did not have any health problems other than acute bronchitis upon intake into the OCDC.[1]

Finally, Plaintiff testified once he was transferred to the ADC from the OCDC, in March 2013, he learned that he suffered from high blood pressure. According to Plaintiff, the nurse at the ADC told him that his high blood pressure probably caused his headaches, nausea, and the other symptoms he suffered while incarcerated at the OCDC. Plaintiff is currently taking blood pressure medication while incarcerated in the ADC.

I also asked Plaintiff to explain specifically how each Defendant violated his constitutional rights. Below is a summary of Plaintiff's sworn testimony:

**Sheriff Norwood**

Plaintiff testified he had a conversation with Sheriff Norwood regarding the conditions of the OCDC and the OCDC grievance process.

**Doug Wood**

Plaintiff testified Defendant Wood was unprofessional and did not help Plaintiff when he filled out medical requests. Plaintiff also testified Defendant Wood did not bring Plaintiff any pain medication. Additionally, Plaintiff testified his headache was very painful with light sensitivity, loss of appetite, nausea, and could not stand up for several days.

**Jason Dickerson**

Plaintiff testified Defendant Dickerson knew of Plaintiff's need for pain medication because

---

[1] Plaintiff also testified he requested a trip to the hospital and a visit with the jail nurse but was denied these requests. I will not consider these statements herein because Plaintiff did not make any such claims in his Complaint nor is there any other evidence on the record regarding such claims. The only medical related claim made in Plaintiff's Complaint and Supplement is that he requested over-the-counter pain medication for a headache and he was told he must wait for commissary day to get such medication. ECF No. 1. Plaintiff may not raise new claims in his response to Defendants' Motion for Summary Judgment.

Plaintiff's fiancé called Defendant Dickerson.

**Andrew Tollerson**

Plaintiff testified Defendant Tollerson was given orders from his supervisor not to provide medication to inmates.

**James Bolton**

Plaintiff testified Defendant Bolton was completely unconcerned with Plaintiff's problems. Plaintiff only had minimal conversations with Defendant Bolton because Defendant Bolton would leave while Plaintiff was trying to speak with him.

**Chris Lindsey**

Plaintiff testified Defendant Lindsey was simply following orders from his supervisors not to give out any over-the-counter pain medication to the inmates.

**Anthony Grummer**

Plaintiff testified Defendant Grummer was simply following orders from his supervisors not to give out any over-the-counter pain medication to the inmates.

**Deanna Friends**

Plaintiff testified Defendant Friends was simply following orders from her supervisors not to give out any over-the-counter pain medication to the inmates.

**Wesley Stringfellow**

Plaintiff testified that Defendant Stringfellow was simply following orders from his supervisors not to give out any over-the-counter pain medication to the inmates.

At the close of the hearing I gave Plaintiff thirty (30) days to submit any exhibits he would like me to consider along with his oral response. Plaintiff's deadline for this submission was

October 16, 2015.  Plaintiff did not submit any exhibits.

In his Complaint, Plaintiff requests both compensatory and punitive damages.

**3.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**4.    DISCUSSION**

In his Complaint and Supplement, Plaintiff alleges official and individual capacity claims regarding his conditions of confinement in the OCDC, his privacy, and his medical care.  I will address each of these categories of claims in turn below.

A.   Official Capacity Claims

Plaintiff has failed to state an official capacity claim against any Defendant. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the Defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants here are treated as claims against Ouachita County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

There are two basic circumstances under which municipal liability will attach: (1)

where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to show any policy of Ouachita County violated his constitutional rights.

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted). Plaintiff has also failed to show any custom of Ouachita

8

County violated his constitutional rights.

Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law.

B.      Conditions of Confinement

Regarding his conditions of confinement claims, Plaintiff specifically claims that his constitutional rights were violated by the lack of tuberculosis lights, sheets, and bed rails at the OCDC. Further, Plaintiff claims the mold on the wall at the OCDC violated his constitutional rights.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Here, Plaintiff was a pre-trial detainee at the time of the alleged incidents, however, the Eighth Circuit applies the same deliberate indifference standard to pretrial detainees as applied to convicted inmates. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions involving "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. *Irving v. Dormire,* 519 F.3d 441 (8th Cir. 2008). However, Plaintiff must show that his living conditions denied him of minimal measure of life's necessities. *Williams v. Delo,* 49 F.3d 442, 445 (8th Cir. 1995). Plaintiff must show that the condition he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

Plaintiff has not even alleged such risks must less provided any summary judgment proof them. The summary judgment record indicates Plaintiff suffered no injuries from the complained of conditions. Plaintiff testified at the hearing he did not contract tuberculosis, he did not fall of his bed due to lack of rails, the lack of a sheet caused no injury to his person, and the mold growing on the wall of his pod also did not injure him in anyway. There is no evidence to indicate

that the condition of the OCDC deprived Plaintiff of the minimal measure of life's necessities.

Furthermore, Plaintiff did not allege any facts regarding how any of the Defendants were responsible for the complained of conditions. "Liability under section 1983 requires some personal or direct involvement in the alleged unconstitutional action. *See e.g., Ripon v. Ales*, 21 F.3d 805, 808-09 (8th Cir. 1994).

Moreover, even if Plaintiff established a constitutional violation regarding the complained of conditions, compensatory damages cannot be awarded for the violation of a constitutional right alone. There must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted). Plaintiff testified at the hearing that he was not injured in anyway by any of the complained of conditions.

Accordingly, all of Plaintiff's conditions of confinement claims fail as a matter of law.

C. <u>Privacy claims</u>

Plaintiff claims in his Complaint and Supplement that allowing a 309 inmate to conduct Plaintiff's book in process and deliver Plaintiff's mail violates his constitutional rights. I construed, as did Defendants, this claim as one for violation of privacy. Defendants argue Plaintiff has not stated a viable right to privacy claim here.

In *Whalen v. Roe,* 429 U.S. 589, 599 (1977), the Court discussed a constitutionally protected "zone of privacy" involving two different kinds of interests. *Id.,* 429 U .S. at 598–599. The first "is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599.

Following *Whalen,* the courts have recognized a constitutionally protected right of individuals to avoid disclosure of personal matters. This right has been variously characterized as the right to confidentiality or the right to privacy. *See e.g., Cooksey v. Boyer,* 289 F.3d 513, 515–516 (8th Cir.2002). However, as pointed out by the Eighth Circuit in *Cooksey* "[n]ot every disclosure of personal information will implicate the constitutional right to privacy." *Id.,* 289 F.3d at 516. The Eighth Circuit noted it had "consistently held that to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Id.* (citations and internal quotation marks omitted).

Further, in the context of individuals detained in prisons or jail, it has been held that although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner,* 515 U.S. 472, 485 (1995).

Here, Plaintiff has not alleged that his personal information was disclosed by the 309 inmates to any third parties or ever used for any purposes other than the OCDC legitimate purposes in housing him. Nor has Plaintiff alleged the content of the information he shared with the 309 inmate at booking or the content of his personal mail was of the type that would cause a shocking degradation or egregious humiliation to him if it were in fact disclosed.

Moreover, as stated above, even if Plaintiff established a constitutional claim regarding the 309 inmate, compensatory damages cannot be awarded for the violation of a constitutional right

alone. There must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted). At the hearing, Plaintiff testified that he was unaware that any of his personal information had been disclosed or any injury he has suffered.

Accordingly, Plaintiff's right to privacy claim regarding the 309 inmates fails as a matter of law.

D.  Grievances

Plaintiff claimed in his Complaint and Supplement his constitutional rights were violated by the lack of grievance procedures at the OCDC. Plaintiff does not have an independent constitutional right to a grievance procedure. *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)). A jail's failure to process an inmate's grievances, without more, is not actionable under section 1983. *Buckley,* 997 F.2d at 495. Accordingly, Plaintiff's claims relating to OCDC's failure to have a grievance procedure fails as a matter of law.

E.  Lock-up

In his Complaint and Supplement, Plaintiff claims Defendant Dickerson threatened him with lock-up for complaining of his pain. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985). Plaintiff makes no claim that he was actually locked down or that he was retaliated against for complaining of his pain. Accordingly, Plaintiff's allegation regarding this threat of lockdown fails as a matter of law.

F.     Medical Care

Plaintiff claims in his Complaint and Supplement that he was denied over-the-counter medication for a headache. Defendants argue Plaintiff has not alleged he suffered from an objectively serious medical need and thus his constitutional rights were not violated. While Plaintiff frames the facts he alleges as a denial of medical care claim, I believe they are more accurately a delay of medical care claim. Plaintiff claims in his Complaint that he suffered a severe headache and accompanying symptoms and when he requested over-the-counter pain medication for this headache he was told he must wait to purchase that medication on commissary day. Plaintiff made no allegation that he could not afford to purchase such medications or that Defendants requirement that he purchase the over-the-counter medications in fact denied him the medications due to a lack of funds. Therefore, I interpret Plaintiff's claims as a delay of medical care claim.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

"[A]n inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995). *See also Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Plaintiff has not presented any verifying medical evidence showing the objective seriousness of the delay in receiving over-the-counter pain medication. While, Plaintiff claims he suffered pain, nausea, and dizziness due to delay in receiving the medication, he did not provide any verifying medical

evidence to show these symptoms were a result of the delayed over-the-counter medications. Therefore, Plaintiff's claim regarding the delay of his medication against Defendants fails as a matter of law.[2]  *Id.*

5.　**CONCLUSION**

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED** and Plaintiff's Complaint and Supplement be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

　　　　**DATED** this **14th day of January 2016.**

　　　　　　　　　　　　　　　　　　　/s/ Barry A. Bryant  
　　　　　　　　　　　　　　　　　　　HON. BARRY A. BRYANT  
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[2] It is clearly established that a prison official may not deny an inmate medical care based on his inability to pay for the medical care.  *See Hartsfield v. Colburn*, 371 F.3d 454, 457-8 (8th Cir. 2004) (a jail doctor, who was aware of the inmate's tooth pain, that withheld dental care for approximately one and a half months for non-medical reasons was not entitled to summary judgment and evidence regarding jail policy on the issue also implicated the sheriff of the county); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987) (prison officials may not condition medical treatment on the inmate's ability or willingness to pay).  Moreover, an intentional refusal to provide medical care constitutes deliberate indifference.  *See Vaughan v. Lacey,* 49 F.3d 1344, 1345 (8th Cir. 1995)(deliberate indifference includes intentional denial of access to medical care).  Here, however, Plaintiff makes no allegations that the delay in his over-the-counter pain medication had anything to do with his ability to pay for the medication.